## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Club Vista Financial Services,<br>L.L.C., a Nevada limited liability company;<br>Tharaldson Motels II, Inc., a North<br>Dakota corporation; and Gary D.<br>Tharaldson, | Civil No. 10-CV-3174 (SRN/JJG) |
| **Plaintiffs,** | **ORDER** |
| **v.** | |
| Maslon, Edelman, Borman & Brand,<br>LLP, a Minnesota limited liability partnership, | |
| **Defendant**. | |

David L. Sasseville and Nell E. Mathews, Lindquist & Vennum, PLLP, 80 South Sixth Street, Suite 4200, Minneapolis, Minnesota 55402; Christine R. Taradash, Martin A. Aronson and John T. Moshier, Morrill & Aronson, PLC, One East Camelback Road, Suite 340, Phoenix, Arizona 85012; and Michael S. Raum, Vogel Law Firm, PO Box 1389, Fargo, North Dakota 58107, for Plaintiffs

Lewis A. Remele, Jr., Kevin P. Hickey, and David A. Turner, Bassford Remele, PA, 33 South Sixth Street, Suite 3800, Minneapolis, Minnesota, for Defendant

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Defendant's Motion to Dismiss. (Doc. No. 43). For the reasons set forth herein, Defendant's Motion to Dismiss is granted in part, and denied in part.

## I.    BACKGROUND

On January 21, 2010, Plaintiff Gary D. Tharaldson and his companies, Plaintiffs Tharaldson Motels II, Inc. ("TM II") and Club Vista Financial Services, LLC ("Club Vista") commenced an action against Defendant Maslon, Edelman, Borman & Brand, LLP ("Maslon")

1

in Nevada state court alleging claims of legal malpractice, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and aiding and abetting misrepresentations and omissions.  (See Compl., Ex. 1 to Notice of Removal [Doc. No. 1].).  Plaintiff Tharaldson is a resident of Nevada, Club Vista is a Nevada limited liability corporation with its principal place of business in Nevada, and, at the time of the filing of the Complaint, TM II was a North Dakota corporation with its principal place of business in Nevada.[1]  Maslon is a Minnesota limited liability partnership with its principal place of business in Minnesota.  (Compl. ¶ 10.)  Maslon contends that all of its lawyers are licensed in Minnesota and none are licensed in Nevada.  (Heaberlin Dep. at 31, Ex. A to Decl. of David Turner.)  The claims arise out of legal representation involving a real estate financing transaction for a project in Las Vegas, Nevada known as Manhattan West.

The Maslon attorney primarily responsible for the legal services at issue was Penny Heaberlin, a resident of Minnesota who is licensed to practice law in Minnesota.  (Heaberlin Dep. at 38-39, Ex. A to Turner Decl.)  Plaintiffs contend that on January 11, 2008, prior to the closing of the Manhattan West loan, Heaberlin attended and participated in a lenders' meeting in Nevada.  (Compl. ¶ 13.)  Heaberlin maintains that the January 11 meeting constitutes the sole time that she was in Nevada in connection with the Manhattan West transaction and that she performed no legal work on that occasion.  (Heaberlin Dep. at 45, Ex. A to Turner Decl.)  Rather, Maslon characterizes the meeting as simply a "meet and greet" event and maintains that all of the work Heaberlin performed in connection with the Manhattan West project, e.g.,

---

[1] At his deposition, Tharaldson testified that TM II is now incorporated in the state of Nevada and is no longer a North Dakota corporation.  (Tharaldson Dep. at 23-24, Ex. C to Aff. of David Sasseville.)

drafting documents, providing legal advice and consulting with the client, was done when she was physically located in Minnesota.  (Id.)

Plaintiffs, who had participated in various real estate financing transactions with non-party Bradley Scott ("Scott") and his non-party company, Scott Financial Corporation ("SFC"), claim that "they came to rely exclusively on Scott and SFC for all of the underwriting, due diligence and feasibility analysis for all of the projects."  (Compl. ¶ 2.)  Although the Complaint is somewhat unclear as to who hired the Maslon law firm, Plaintiffs allege that Maslon "was hired to represent Tharaldson and his business entities in documenting and providing legal advice on each of these transactions."  (Id.)  Maslon disputes that it represented Plaintiffs regarding the Manhattan West project, and instead, asserts that it only represented Scott and SFC with respect to the project.  (See Def.'s Mem. Supp. Mot. Dismiss at 1.)

Prior to the Manhattan West project, in 2005 and 2006, Plaintiff Club Vista retained Maslon in connection with loan documentation work on different projects that had no relation to the Manhattan West project.  (See Retainer Letters of 12/28/05 and 17/10/06 from P. Heaberlin to G. Tharaldson, Exs. F& G to Sasseville Aff.; Aff. of Penny R. Heaberlin ¶ 6, Ex. A to Hickey Aff.)  Tharaldson testified in his deposition that as to the Maslon firm's representation, "I assumed that once they were my lawyers, they [were] always my lawyers."  (Tharaldson Dep. at 28, Ex. C to Sasseville Aff.)   While Attorney Heaberlin attests that Tharaldson never hired Maslon to represent him in his personal capacity (Heaberlin Aff. ¶ 5, Ex. A to Hickey Aff.), Tharaldson testified that he believed that Maslon represented both him and his corporate entities. (Tharaldson Dep. at 69, 29, Ex. C to Sasseville Aff.)  In addition, he testified that he could not see a distinction between whether Scott hired Maslon on Tharaldson's behalf or whether

Tharaldson directly retained Maslon.  (Id.)  Tharaldson also testified that Scott had informed him that Maslon was handling their collective legal needs related to Manhattan West.  (Id. at 28-29; 85.)  Scott, however, contradicts Tharaldson's testimony, rejecting the notion that he told Tharaldson that Maslon represented Tharaldson's interests in connection with the Manhattan West project:

> I used Maslon five, six years before Tharaldson ever got involved with the transactions with Scott Financial, and we used them on every transaction going forward.  We made it perfectly clear in our marketing materials that Maslon was our law firm.  If he -- if he made that conclusion, that all of a sudden because they were my law firm, they became his law firm, that's --that's his problem.

(Scott Dep. at 54-55, Ex. A to Sasseville Aff.)   Scott testified that Tharaldson had engaged an attorney named Bill Spiry to represent him related to certain previous transactions, but in the past few years, Tharaldson had grown averse to paying for legal services such that "he never had lawyers."  (Id. at 38-39.)  Attorney Heaberlin identified only Brad Scott and Scott Financial as her clients in connection with the Manhattan West project.  (Heaberlin Dep. at 48-49, Ex. B to Sasseville Aff.)

In the Complaint, Plaintiffs contend that Scott, SFC and non-party the Bank of Oklahoma induced Plaintiffs to participate in the Manhattan West project through various misrepresentations, omissions and breaches of their fiduciary duties.  (Compl. ¶ 4.)  In Count I, Plaintiffs allege that Maslon, with whom they had a "long-standing attorney/client relationship with respect to the Manhattan West project, as well as many other prior transactions," committed legal malpractice in rendering legal services to Plaintiffs on the Manhattan West project. (Compl. ¶¶ 198; 199-202.)  Plaintiffs assert a claim for negligent misrepresentations/omissions in Count II (id. ¶¶ 203-212), and breach of fiduciary duty in Count III  (id. ¶¶ 213-216), based on

Maslon's work involving the Manhattan West project.  In Count IV, Plaintiffs' claim for aiding

and abetting a breach of fiduciary duty, they contend that Scott, SFC and the Bank of Oklahoma

breached fiduciary duties to Plaintiffs, of which Maslon was aware and in which it assisted.  (Id.

¶¶ 217-224.)  In Count V, Plaintiffs' claim for aiding and abetting misrepresentations and

omissions, they allege that Scott and SFC made negligent misrepresentations or omissions of

which Maslon was aware, and in which Maslon provided material assistance. (Id. ¶¶ 225-229.)

Defendant removed the case from Nevada state court to the United States District Court

for the District of Nevada based on diversity of citizenship.   Subsequently, Defendant moved to

dismiss for lack of personal jurisdiction, or alternatively, to transfer venue to this Court.  The

Honorable Gloria M. Navarro, United States District Judge for the District of Nevada, denied the

motion to dismiss, but transferred the case to Minnesota for the convenience of the parties.

Judge Navarro found that while Nevada's personal jurisdiction over Maslon was proper, the case

should be venued in Minnesota:

> The Court grants the motion to transfer venue under § 1404(a).  The sole
> Defendant resides in Minnesota, and Plaintiffs do not appear to deny that nearly
> all of the legal representation (the events giving rise to Plaintiffs' claims against
> Defendant) occurred there.  The evidence and witnesses as to the alleged conflicts
> of interest and misrepresentations are mostly in MInnesota.  Plaintiffs focus on
> their own actions and the actions of non-parties, but the focus of the analysis is on
> the actions giving rise to the claims, which in this case is the legal work
> performed by Defendant.  Apart from a single meeting in Nevada, all of the legal
> work appears to have been conducted in Minnesota.

(Nevada Order of 7/29/10 at 10 [Doc. No. 32].)

On April 20, 2010, counsel for Defendant sent a letter to Plaintiffs' counsel demanding

compliance with Minnesota's expert review statute, Minn. Stat. § 544.42, which requires that, in

malpractice actions against non-medical professionals, plaintiffs must provide an affidavit of

expert review upon service of the complaint, and an affidavit of expert disclosure 180 days later.

(Letter of 4/20/10 from K. Hickey to C. Taradash, Ex. B to Hickey Aff.)   On June 14, 2010,

prior to the issuance of the Nevada District Court's  ruling on dismissal or transfer, Plaintiff's

counsel served on Defendant the Affidavit of Martin A. Aronson, submitted pursuant to

Minnesota's expert review statute.  (See Aronson Aff., Ex. D to Hickey Aff.)  In Plaintiffs'

affidavit of expert review, Plaintiffs' counsel averred that he had consulted with an expert who

would offer the opinion at trial that Maslon deviated from the applicable standard of care in its

representation of Plaintiffs.  (Id. ¶¶ 2-3.)  In the affidavit, Aronson also stated that, while

Plaintiffs did not believe that Minnesota law applied to their claims, they provided the affidavit

in the event that a court ruled otherwise.  (Id. ¶ 4.)  Finally, Plaintiffs' counsel stated that "[t]his

affidavit could not have been obtained before the action was commenced because of the

applicable statute of limitations."  (Id. ¶ 5.)  Plaintiffs have not served an affidavit of expert

disclosure on Defendant.

Defendant moves to dismiss for Plaintiffs' failure to comply with the Minnesota expert

review statute, specifically, the provision requiring expert disclosure, Minn. Stat. § 544.42, subd.

4(a).  Plaintiffs, however, argue that Minnesota law does not apply to their claims, thus they are

not required to comply with the expert review statute.   Instead, Plaintiffs contend that Nevada

law, which contains no such affidavit requirement, applies to their claims.

In their initial response to Maslon's moving papers, Plaintiffs alternatively argued that if

the Court determined that Minnesota's statute might apply, unresolved questions of fact made

dismissal inappropriate.  (See Pls.' Opp'n Mem. at 23-24.)  Following the March 4, 2011 hearing

on Defendant's motion, the Court agreed that discovery limited to the choice of law would assist

the Court and ordered the parties to engage in a 90-day period of discovery.  The parties then

submitted supplemental briefing to the Court regarding the choice of law.  (See Order of 3/4/01

[Doc. No. 63].)

## II.    DISCUSSION

### A.    Choice of Law Framework

In an action based on diversity of citizenship, a federal court generally applies the choice-

of-law rules of the jurisdiction in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.

487, 496 (1941).  However, when an otherwise properly filed civil action is transferred from a

district court in one state to another state solely "[f]or the convenience of parties and witnesses,"

28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the

transferor court sits.  Ferens v. John Deere Co., 494 U.S. 516, 531 (1990).  This action was

brought in Nevada state court, then removed to Nevada federal court.  That court then transferred

the case to this district pursuant to Defendant's § 1404(a) motion.   Therefore, Nevada's choice of

law rules govern whether Minnesota or Nevada law applies to Plaintiffs' claims.

### 1.    Legal Malpractice Claim: Determination of Actual Conflict

The first step in the Court's analysis is to determine whether an actual conflict exists

between the laws of Minnesota and Nevada.[2]  Under Minnesota law, a claim for malpractice

_____

[2] Plaintiffs also argue that North Dakota law may apply, based on the citizenship of non-parties Scott and SFC.  (Pl.'s Opp'n Mem. at 2; 14 [Doc. No. 51]) ("[G]iven the fact that at least one of the Plaintiffs is a resident of North Dakota, and Plaintiff's principal agent in connection with the underlying transaction was also a North Dakota resident, an argument can be made that North Dakota law might apply.")   Since the filing of Plaintiffs' brief, however, Plaintiff TM-II is no longer incorporated under the laws of the State of North Dakota. (Tharaldson Dep. at 23-24, Ex. C to Sasseville Aff.)  There is no strong argument under Nevada's choice of law framework that North Dakota law applies.  Two loan guaranty agreements apparently involving Manhattan West designated the application of Nevada and North Dakota law respectively, to controversies

7

requires "'(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action.'" Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 711 N.W.2d 811, 816 (Minn. 2006) (quoting Blue Water Corp. v. O'Toole, 336 N.W.2d 279, 281 (Minn. 1983)). Expert testimony is generally required to establish the "standard of care, applicable to an attorney whose conduct is alleged to have been negligent, and further to establish whether the conduct deviated from that standard." Id. at 817. "However, such expert testimony is not necessary when the matters to be proven are within the area of common knowledge and lay comprehension." Hill v. Okay Constr. Co., 252 N.W.2d 107, 116 (Minn. 1977).

Where a party intends to rely on expert testimony to establish a prima facie case of malpractice, the party is required to comply with the mandates of Minn. Stat. § 544.42. This statute requires the attorney for a party asserting a claim of malpractice to serve with the complaint, an initial expert affidavit of review stating that the lawyer's conduct fell below the applicable standard of care. See Minn. Stat. § 544.42, subd. 2(1). The statutory requirements of the affidavit are exacting and require the attorney for the party alleging malpractice to draft the

---

related to the agreements, but Defendant was not a party to those agreements. (See, e.g., Guaranty ¶ 10, Ex. D to Sasseville Aff.) Moreover, to the extent that any contract governs application of a given state's law to Plaintiffs' legal malpractice claim, such a contract should be in the form of an attorney-client retainer agreement. No such agreement appears to exist between Plaintiffs and Defendant as to the Manhattan West project. To the extent that Maslon previously represented Club Vista on matters unrelated to Manhattan West, those earlier, unrelated retainer agreements provided that disputes arising out of Maslon's legal services would be arbitrated in Minnesota. (Letter of 12/28/05 from P. Heaberlin to G. Tharaldson, Ex. F to Sasseville Aff.; Letter of 7/10/06 from P. Heaberlin to G. Tharaldson, Ex. G to Sasseville Aff.) The Court therefore confines its discussion to Nevada and Minnesota law.

affidavit and state under oath:

> The facts of the case have been reviewed by the party's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinion could be admissible at trial and that, in the opinion of the expert, the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff.

Minn. Stat. § 544.42, subd. 3(a)(1).

Within 180 days of the service of the pleading asserting malpractice, the plaintiff's attorney must serve a second affidavit, the affidavit of expert disclosure, stating the following:

> the identity of each person whom the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the party's attorney and served upon the opponent within 180 days after commencement of the action against the defendant or within 180 days after service of the affidavit required by subdivision 3, paragraph (a), clause (2) or (3).

Minn. Stat. § 544.42, subd. 4(a).

Failure to comply with these provisions can lead to the mandatory dismissal of the malpractice claim. See Minn. Stat. § 544.42, subd. 6; House v. Kelbel, 105 F. Supp.2d 1045, 1054-55 (D. Minn. 2000). The statute provides two safe harbor opportunities relevant to the facts of this case. First, if a party fails to provide an affidavit of expert review with its complaint, it is given an opportunity to cure that failure by serving an affidavit within 60 days of a defendant's demand. Minn. Stat. § 544.42, subd. 6(a). Second, when a plaintiff faces a motion to dismiss for failure to comply with the affidavit of expert disclosure due to deficiencies in the affidavit, the plaintiff may be permitted 60 days in which to correct any inadvertent errors and satisfy the statute. Id., subd. 6(c). This Court has held that this provision in 6(c) is applicable

only where an affidavit of expert disclosure has been provided, but is challenged as deficient; it is not applicable where the affidavit of expert disclosure has not been provided at all.  House, 105 F. Supp.2d at 1050-51.

Prior to the enactment of § 544.42 in 1997, Minnesota legal precedent generally required expert testimony in order to establish whether the legal conduct at issue deviated from the standard of care.  Meyer v. Dygert, 156 F. Supp.2d 1081, 1090 (D. Minn. 2001) (citing Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 264 (Minn. 1992.)) The expert review statute was enacted "for the purpose of eliminating frivolous lawsuits, like the predecessor statute governing medical malpractice claims, Minn. Stat. § 145.682." Id. (citations omitted).   While Plaintiffs argue that this statute has never been applied to an out-of-state plaintiff who is in a Minnesota forum by virtue of a motion to transfer venue, nothing in the language of the statute limits its application to cases originating in Minnesota.[3]

Under Nevada law, the required elements of a legal malpractice claim are: (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence.  Mainor v. Nault, 101 P.3d 308, 324 (Nev. 2004).

Generally, under Nevada law, as with Minnesota law, expert testimony is required to

---

[3]  The issue of the application of Minn. Stat. § 544.42 to actions filed out of state was before this Court in American Property Development Southwest LLC v. Landform Engineering Co., 07-CV-3556 DWF/AJB, 2007 WL 4461506 *2 (D. Minn. Dec. 14, 2007), however, the Court did not reach the issue because of the larger question of whether the governing contract, containing a Minnesota choice-of-law designation, was legally enforceable.

establish the attorney's breach of care where the breach is not so obvious that negligence can be determined as a matter of law.  Allyn v. McDonald, 910 P.2d 263, 266 (Nev. 1996.)  For example, in certain circumstances, a malpractice case based on an attorney's failure to comply with the applicable statute of limitations could bring the negligence claim "within the ordinary knowledge and experience of a layman," so that expert testimony would be unnecessary.  Id. However, "if the applicability of the statute at issue [is] uncertain, if significant questions regarding the accrual date of the claim exist[], or if issues regarding tolling of the statute exist[]," the case might require an expert to establish the attorney's breach of the duty of care.  Id.

The Court finds that the facts of this case require expert opinion, as Plaintiffs allege that Maslon represented them in connection with the Manhattan West project and Maslon disputes the existence of an attorney-client relationship.   Plaintiffs argue that Maslon owed them a duty of care, and given these facts, expert testimony is necessary as to several issues, including what duties were owed, whether there was a deviation from the applicable standard of care, whether the attorney's communications were with the appropriate party, and whether the attorney properly withheld information from certain parties.  However, Plaintiffs failed to provide the affidavit of expert disclosure, which requires the identification of their expert and disclosure of the grounds of the expert's opinion on central elements of a legal malpractice claim: "negligence, malpractice, or causation."  Minn. Stat. § 544.42, subd. 4(a).

Although Plaintiffs failed to provide the first affidavit of expert review with their pleadings, they did provide it on June 14, 2010, within 60 days of Defendant's April 20, 2010 demand, thus relying on the safe harbor provided in Minn. Stat. § 544.42, subd. 6(a) to comply

with subd. 2(1).[4]   However, Plaintiffs did not provide the second affidavit within 180 of service

of the Complaint, which was filed on January 21, 2010.  Nor did Plaintiffs provide the second

affidavit in June 2010 when they provided the affidavit of expert review, nor did they provide it

by July 20, 2010 -- 180 days after the filing of the Complaint.  In fact, Plaintiffs have not

provided the second affidavit <u>at any time</u>.   The parties have not agreed to waive or modify the

requirement, nor have Plaintiffs requested that this Court waive or modify the requirement for

good cause.  <u>See</u> Minn. Stat. § 544.42, subd. 4(b) ("The parties by agreement, or the court for

good cause shown, may provide for extensions of the time limits specified in subdivision 2, 3, or

this subdivision.")  At least as of April 20, 2010, the date of Defendant's demand letter for

compliance with the Minnesota statute, Plaintiffs were on notice that Minnesota law might be

applied to their claims.  Plaintiffs acknowledged as much in their affidavit of expert review,

stating that it was provided "solely in the event the Court rules that Minnesota law does apply."

(Aronson Aff. ¶ 4, Ex. D to Hickey Aff.)  In response to the instant motion, Plaintiffs argue that

the affidavit of expert disclosure is required 180 days after the filing of the complaint in order to

allow the parties to conduct some preliminary discovery and that no discovery has taken place

here, as Maslon's removal motion in Nevada federal court was not resolved until July 29, 2010.

Therefore, they argue, the consequences for failing to provide the affidavit of expert disclosure

---

[4]  Defendant argues that Plaintiff's affidavit of expert review, the Aronson Affidavit, is faulty.   In the affidavit, Plaintiffs reserve their objection to the application of Minnesota law and also argue that they were unable to file a timely affidavit because of the imminent expiration of an unspecified statute of limitations.  Maslon argues that because of the contradictory allegations in the Aronson Affidavit, it is insufficient under § 544.42.  The Court disagrees and finds nothing in the statute prohibiting Plaintiffs from providing the affidavit while also reserving their objection to its application.  The Court agrees with Maslon that Plaintiffs' professed reason for their inability to comply with the expert review statute (i.e.,"the applicable statute of limitations") is both vague and seemingly contradictory, however that does not render it faulty because Plaintiffs provided it within the 60 days permitted by the statute.

would be unfairly applied to them.   However, even if this matter had not been removed,

Plaintiffs would still have had to seek expert evaluation of their claims, as they apparently claim

to have now done.   Plaintiffs could also have attempted to reach an agreement with Defendant to

file later an expert disclosure affidavit, or, upon a showing of good cause, sought the Court's

leave for additional time in which to comply.   Minn. Stat. § 544.42, subd. 4(b).

It is clear that Plaintiffs have not complied with requirements of Minn. Stat. § 544.42,

subd. 4, for which the penalty is mandatory dismissal of each cause of action with prejudice as to

which expert testimony is necessary to establish a prima facie case.   Minn. Stat. § 544.42, subd.

6.   Again, the expert disclosure affidavit requires information going to the substance of a

plaintiff's legal malpractice claim, i.e., the disclosure of experts expected "to testify with respect

to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to

which the expert is expected to testify, and a summary of the grounds for each opinion."   Id.,

subd. 4(a).   There is no such requirement under Nevada law.   As the application of Minnesota's

law results in the dismissal of Plaintiffs' malpractice claim and the application of Nevada's law

does not, this constitutes an outcome determinative conflict, requiring the Court to conduct a

choice of law analysis under Nevada's Second Restatement framework.

The Court is aware that various Minnesota decisions have alternately construed Minn.

Stat. § 544.42 as procedural or substantive.   Based on the facts of this case, the opinions

construing the statute and the analogous medical malpractice expert review statute, Minn. Stat. §

145.682, as substantive, are most directly applicable to this case.   See Ellingson v. Walgreen Co.,

78 F. Supp.2d 965, 968 (D. Minn. 1999) (finding medical malpractice expert review statute is

substantive under Erie doctrine, and is not superseded by the Federal Rules of Civil Procedure);

13

Oslund v. United States, 701 F. Supp. 710, 713-14 (D. Minn. 1988) (applying the medical malpractice expert review statute as substantive and rejecting argument that statute is procedural and in conflict with the Rules of Civil Procedure); Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff and Hobbs, Ltd., 783 N.W.2d 733, 744 (Minn. Ct. App. 2010) ("A plaintiff bringing a legal-malpractice action must produce expert affidavits sufficient to establish a prima facie case.")

The fundamental question is how Nevada would construe Minnesota's statute, as the Court must apply Nevada's choice of law framework to this matter. While Nevada lacks a comparable expert review statute for legal malpractice actions, it has an analogous medical malpractice statute, NRS 41A.071. That statute requires the dismissal of actions for medical or dental malpractice that are filed without an affidavit "supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice" underlying the malpractice claim. NRS 41A.071. The Nevada Supreme Court has noted that the underlying purpose of the statute is to ensure that medical malpractice actions "be brought in good faith and upon competent expert opinion." Borger v. Eighth Judicial District Court, 102 P.3d 600, 606 (Nev. 2004). "[T]he statute clearly works against frivolous lawsuits filed with some vague hope that a favorable expert opinion might eventually surface." Id. Although this Court is unaware of a Nevada case in which the statute was deemed substantive or procedural, the Nevada Supreme Court has interpreted this statute to mean "that a medical malpractice complaint filed without a supporting medical expert affidavit is void ab initio, meaning it is of no force and effect." Washoe Med. Ctr. v. Dist. Ct.,

148 P.3d 790, 794 (Nev. 2006).[5]   The Court concludes that application of similar Nevada

statutes is outcome determinative and, accordingly, an analysis under Nevada's choice of law

framework is warranted.

### 2.      Constitutionality

The Court must first ascertain whether each state has "a significant contact or significant

aggregation of contacts," creating a state interest, so that the choice of law is neither arbitrary

nor fundamentally unfair.  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985) (quoting

Allstate Ins. Co. v. Hague, 449 U.S. 302, 308 (1981)).  The Constitution places "modest

restrictions" on application of a forum's law.  Id.  "[I]n order to ensure that the choice of . . .law

is not arbitrary or unfair," there must be sufficient contacts supporting the state's interest in

applying its law.  Id. at 821-22.  The fairness of applying a forum's law may also be measured by

examining the expectations of the parties.  Id. at 822.   Minnesota has significant contacts

because it appears that all of the legal work at issue was conducted in Minnesota, Ms. Heaberlin

is licensed in Minnesota, and Maslon is located only in Minnesota.  Minnesota has a vested

interest in ensuring that its attorneys are held to the applicable standard of care and, likewise,

that legal malpractice actions in Minnesota are non-frivolous.  Moreover, firms whose attorneys

are licensed to practice in Minnesota may reasonably expect the application of Minnesota law to

legal malpractice claims arising out of Minnesota legal work.

---

[5]  A similar Nevada statute, NRS 11.258, requires the initial pleading in malpractice
actions involving nonresidential construction against design professionals to include an affidavit
of expert review and expert report.  The Nevada Supreme Court recently interpreted that
statute's mandatory dismissal language consistent with its interpretation of NRS 41A.071, so that
failure to comply with NRS 11.258 renders the complaint void.  Otak Nevada, LLC v. Eighth
Judicial Dist. Court of Nevada State, ___ P.3d ___, No. 56065, 2011 WL 3962822,  *4  (Nev.
Sept. 8, 2011).

Nevada's contacts consist of Plaintiffs' citizenship and Plaintiffs' allegation that they received legal services, or were injured by legal services, in Nevada.  The provision of legal services is strongly disputed, as any evidence of an attorney-client relationship is tenuous at best.  Minnesota's contacts are more significant for constitutional purposes.   While the Court has reservations about the significance of the contacts supporting Nevada's interest in applying its law, Nevada's contacts arguably comprise an "aggregation of significant contacts."   Plaintiffs are Nevada citizens who apparently expected to seek recourse in Nevada for alleged legal malpractice concerning a Nevada real estate development and Nevada has an interest in its citizens obtaining non-negligent legal representation.  The Court finds that the application of either state's law is constitutional.

### 3.   Second Restatement Analysis

Nevada applies the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws ("Second Restatement"), section 145, in tort actions, unless a more specific section of the Second Restatement applies to the particular tort.  General Motors Corp. v. Eighth Judicial Dist. Ct., 134 P.3d 111, 117 (2006).  Based on this Court's review, no other section of the Second Restatement applies more specifically to Plaintiffs' claims.[6]

_____

[6]  While the particular facts of a legal malpractice action may sound in tort and contract, thereby requiring a Second Restatement conflicts analysis under both § 145 for tort actions and § 196 for contract actions, this is not such a case.  There is not a contract between the parties to this case specific to the Manhattan West project, Plaintiffs have produced no invoices for legal work on the project, and the central issues do not concern the validity of a contract for legal services between Plaintiffs and Maslon.  Accordingly, the Court confines its conflicts of law analysis to a tort theory under § 145.  See St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 233 F. Supp.2d 171, 176 n.3 (D. Mass 2002) (applying § 145 factors applicable to torts to legal malpractice claim where no contract governed the parties' relationship and substantive issues did not concern validity of contract).  Moreover, the focus of Plaintiffs' claims is that Maslon negligently performed its services, giving rise to a tort claim, rather than Maslon accepted a fee, but failed to perform legal work, giving rise to a contract claim.  See

The Second Restatement's most significant relationship test begins with a general principle, contained in § 145: the rights and liabilities of parties with respect to an issue in tort are governed by the local law of the state that, "with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts § 145 (1971).  Section 6 identifies the following principles:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

(Id. § 6.)

Under the significant relationship test, courts are guided by the following factors when considering application of the principles of § 6:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,

---

McCoubrey v. Kellogg, Krebs & Moran, 7 Fed. Appx. 215, 219 (4th Cir. 2001) (finding that legal malpractice claim sounds in tort where attorney negligently performs a task and sounds in contract where attorney accepts a fee but fails to perform services).

>(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

>(d) the place where the relationship, if any, between the parties is centered.

Id. § 145.  "These contacts are to be evaluated according to their relative importance with respect to the particular issue."  Id.

### a.      Applying the § 145 Restatement Factors

### i.      Place Where the Injury Occurred

The place where the "injury" occurred in this case is not entirely clear.  Maslon was retained by its North Dakota client to document the participation loan -- a loan that involved Plaintiffs, non-party SFC and 29 individual banks from multiple states.  Although the loan was for the development of property in Nevada, the work performed by Maslon was for the financing and loan documentation of SFC.  Plaintiffs' focus on the fact that the loan concerned Nevada property is not the proper focus, as the subject of the loan is not truly material to the legal malpractice action.   In any event, it cannot be said that the "locus of injury" favors application of Nevada law.   In a legal malpractice action, one court has noted that when an injury is pecuniary in nature, the place where the injury occurs is not so important in determining which state has the most significant relationship to an action.  See Stavriotis v. Litwin, 710 F. Supp. 216, 218 (N.D. Ill. 1988).  "This is because the place where a pecuniary injury occurs is far more difficult to locate than the place where a physical injury to a person or to a tangible thing occurs."  Id. (citing Restatement Second § 148 (1971)).  Instead, the most critical factor in determining which state has the most significant relationship to the action is the place where the conduct causing the injury occurred.  Id.

Plaintiffs also cite certain cases for the proposition that the place where the legal advice is received is where the injury occurs.[7]  (Pls.' Opp'n Mem. at 20-21.)  In most of these cases, the attorney in question appeared or provided services in the state whose law the courts ultimately applied.  That is not the case here.  The cases cited by Plaintiffs do not support the application of Nevada law in a malpractice action in which a Minnesota attorney performed no legal work and gave no legal advice in Nevada.  This factor weighs in favor of applying Minnesota law.

### ii.    Place Where the Conduct Causing the Injury Occurred

Assuming, for purposes of this motion only, that Maslon represented Plaintiffs, the conduct or alleged legal malpractice giving rise to the cause of action occurred in Minnesota.  The record is clear that all of the legal work in the case was performed in Minnesota.  Heaberlin visited Nevada on a single occasion in connection with the Manhattan West project and performed no legal work in the course of that visit, which was a "meet and greet" event at which she briefly spoke.  While Plaintiffs argue that Judge Navarro considered that single contact sufficient evidence of "legal work," Judge Navarro, facing Defendant's motion to dismiss based on jurisdiction, was limited to consideration of  the allegations in the Complaint, viewed in the

---

[7]  See, e.g., Washburn v. Soper, 319 F.3d 338 (8th Cir. 2003) (applying Illinois law instead of Iowa law where attorney licensed in both states appeared in Illinois court proceedings that gave rise to malpractice claim; Jacobsen v. Oliver, 201 F. Supp.2d 93, 99-100 (D. D.C. 2002) (applying District of Columbia law instead of Pennsylvania law where attorney was admitted to practice pro hac vice in D.C. and made numerous court appearances and filings there giving rise to the claim); O'Keefe v. Darnell, 192 F. Supp.2d 1351 (M.D. Fla. 2002) (applying Kansas law where Florida attorney traveled to and performed estate planning and administration services in Kansas; Adams v. Rubin, 964 F. Supp. 507, 510 (D. Maine 1997) (applying Massachusetts law in case involving direct suit against New York insurer instead law of Maine, which was state of former attorney).

light most favorable to Plaintiffs.[8]   Moreover, in Judge Navarro's ruling on Maslon's motion to transfer venue, the court found that "nearly all of the legal representation" occurred in Minnesota and "[t]he evidence and witnesses as to the alleged conflicts of interest and misrepresentations are mostly in Minnesota."  (Order of 7/29/10 at 10 [Doc. No. 32].)   Again, although in the context of a motion to transfer venue, the Nevada court emphasized Minnesota's connection to the malpractice cause of action, noting that "Plaintiffs focus on their own actions and the actions of non-parties, but the focus of the analysis is on the actions giving rise to the claims, which in this case is the legal work performed by Defendant."  Id.

Here, the instant motion is brought under Minn. Stat. § 544.42, which mandates dismissal for non-compliance and contains no provision limiting the Court's consideration of evidence. When considering a Rule 12(b)(6) motion to dismiss, the Court would be limited to the facts as alleged in the Complaint, but Defendant's motion is not before the Court under that standard. Further, the Court has the benefit of additional discovery – discovery that Plaintiffs suggested that the Court order as an alternative to summary dismissal –  that was not before Judge Navarro. That discovery demonstrates that Heaberlin and Maslon performed no legal work in Nevada in connection with the Manhattan West project.  Not only did Attorney Heaberlin testify that all legal work was done in Minnesota and that no legal work on Manhattan West was performed on the single business trip, Plaintiff Tharaldson could not identify any legal advice Plaintiffs received from Heaberlin at the single meeting.  (Tharaldson Dep. at 76-77, Ex. C to Sasseville

---

[8]  Judge Navarro qualified her conclusion by noting that, for purposes of a motion to dismiss, the court was obliged to believe Plaintiffs' allegations that Heaberlin performed legal work during the visit to Nevada, noting that "nowhere else in the Complaint do Plaintiffs allege that Defendant ever performed any legal work on behalf of Plaintiffs while Defendant was in Nevada."  (Order of 7/29/10 at 8 [Doc. No. 32].)

Aff.)  Non-party Brad Scott testified that communications with Maslon regarding Manhattan West came from Maslon's Minneapolis offices, and that Maslon's attorneys did not travel to North Dakota to meet with him about the project.  (Scott Dep. 56-58, Ex. A to Sasseville Aff.) In light of all of the above, the Court concludes that this factor, i.e., where the <u>conduct</u> causing the injury occurred, favors the application of Minnesota law.

### iii.    Domicile, Residence and Place of Incorporation of the Parties

Defendant Maslon is located only in Minnesota. (<u>See</u> Heaberlin Aff. ¶ 2, Ex. A to Hickey Aff.)   As for the Plaintiffs, Gary Tharaldson is a Nevada resident, TM-II changed its state of incorporation from North Dakota to Nevada in 2011, and Club Vista is a Nevada corporation. (Tharaldson Dep. at 7, 23-24, Ex. C to Sasseville Aff.)  Even assuming that Plaintiffs were Maslon's clients, at least one court has applied the law of a law firm's domicile in a legal malpractice action under the theory that the client voluntarily chose to retain the defendant lawyers.  <u>See</u> <u>Foulke v. Dugan</u>, 187 F. Supp.2d 253, 257-58 (E.D. Pa. 2002).  Here, if Plaintiffs did retain Maslon, they did so presumably knowing that Maslon was located in Minnesota. (<u>See</u> Tharaldson Dep. at 5; 68, Ex. C to Sasseville Aff.)  When Club Vista had previously retained Maslon, the retainer agreements specified that any disputes arising out of the firm's representation would be arbitrated in Minneapolis, Minnesota.  (Letter of 12/28/05 from P. Heaberlin to G. Tharaldson, Ex. F to Sasseville Aff.; Letter of 7/10/06 from P. Heaberlin to G. Tharaldson, Ex. G to Sasseville Aff.)   Nonetheless, the Court finds that the domicile of the parties, divided between Minnesota and Nevada, does not necessarily weigh in either side's favor.  However if an attorney-client relationship existed, Tharaldson retained Maslon knowing that the firm was located in Minnesota.

####    iv.    Place Where Relationship Between the Parties, if Any,
is Centered

Plaintiffs argue that the relationship between the parties is centered in Nevada, because the legal work performed by Maslon concerned a Nevada real estate development, the closing occurred in Nevada and documents were recorded in Nevada.  The Court disagrees.  Again, the "relationship" at issue for purposes of this legal malpractice action is the attorney-client relationship.   During Maslon's alleged representation of Plaintiffs with respect to Manhattan West, Defendant was located exclusively in Minnesota.  Tharaldson, a Nevada resident, owns property in Minnesota and also lives in North Dakota for a portion of the year.  (Tharaldson Dep. at 12-16, Ex. C to Sasseville Aff.)  TM-II was a North Dakota corporation during the time of the Manhattan West work that is the subject of Plaintiffs' suit and Club Vista is a Nevada Corporation.  Although Tharaldson never visited Maslon's Minneapolis office, he knew Maslon was a Minnesota-based firm with a single office in Minnesota.   There is no evidence suggesting that Maslon's legal work was performed in Nevada.  To the extent that the relationship is "centered" anywhere, Minnesota is the more "constant" plausible center, as Maslon is located exclusively in Minnesota.

####    b.    Applying Restatement § 6 Factors

Next, the Court turns to the choice-influencing factors of § 6 to take into account the interests of the parties and the forums.  In this case, factor (a), the needs of the interstate and international systems, does not point strongly in any particular direction.  Factor (f), certainty, predictability and uniformity of results, arguably weighs in favor of applying Nevada law to the extent that doing so promotes uniform results by holding out-of-state attorneys accountable to Nevada clients to the same degree as in-state attorneys.  However, a similar argument may be

made for the application of Minnesota law, as nothing in the language of Minn. Stat. § 544.42 limits its application to in-state malpractice actions, and Minnesota has an interest in discouraging frivolous malpractice actions.  This factor, therefore, is neutral.  Factor (d), the protection of justified expectations, is not particularly relevant as the parties were unlikely to consider the forum for a legal malpractice action when entering into the alleged attorney-client relationship.  In fact, for this very reason, Comment (g) to § 6 acknowledges that this factor may be irrelevant in negligence actions: "There are occasions, particularly in the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied.  In such situations, the parties have no justified expectations to protect, and this factor can play no part in the decision of a choice-of-law question." Restatement (Second) of Conflicts of Laws § 6, comment g.  As to § 6, factor (g), which examines the ease in the determination and application of the law to be applied, the Court finds either states' laws regarding legal malpractice actions may be applied without difficulty.

The Court therefore focuses its analysis on the following § 6 factors:  (b), the relevant policies of the forum; (c), the relevant policies of other interested states and relative interests of those states in the determination of the particular issue; and (e), the basic policies underlying the particular field of law.  Although both Minnesota and Nevada have an interest in compensating the victims of legal malpractice, only Nevada has an interest in compensating Plaintiffs in particular, as they are either Nevada residents or incorporated in Nevada.  With respect to a malpractice action, Nevada has an interest in protecting the relationship between clients and attorneys practicing in Nevada.  That interest is less strong, however, in this factual situation, where the existence of an attorney-client relationship is challenged, the attorney in question is

not admitted to the Nevada bar, and the Defendant law firm's only office is in Minnesota.

Plaintiffs invoke Nevada's rules of professional conduct, arguing that Nevada's interest in regulating the conduct of out-of-state attorneys outweighs Minnesota's interest in regulating its attorneys. However, the issue triggering this conflicts analysis is whether Minn. Stat. § 544.42 applies to Plaintiffs' legal malpractice claim, and Attorney Heaberlin's non-admission to the Nevada bar is not the basis for Plaintiffs' claims. Under Nevada law, while the violation of the professional rules of responsibility may be relevant to the standard of care, any such violation does not create a private right of action. Mainor, 101 P.3d at 320; see also Leonard v. Dorsey & Whitney, LLP, 553 F.3d 609, 628 (8th Cir. 2009) (citing Minnesota's Rules of Professional Conduct, and stating that the violation of an ethics rule, by itself, neither gives rise to a cause of action, nor a presumption that a legal duty has been breached). Moreover, the facts of this case do not support consideration of Nevada's professional conduct rules as Heaberlin's legal work was performed outside of Nevada, and the bulk of the evidence suggests that Maslon's legal work was performed for a non-Nevada client, SFC.

Rather, in light of the facts of this case and the determination of the particular issue, the Court finds that Minnesota's interest in regulating its attorneys' conduct is predominant over Nevada's interest. See Spirit Partners, LP v. Stoel Rives LLP, 157 P.3d 1194, 1201 (Or. App. 2007) (California has little interest in regulating conduct in Oregon by Oregon law firm); Seippel v. Jenkens & Gilchrist, P.L.C., 341 F. Supp.2d 363, 380 (S.D.N.Y. 2001) (New York's interest in regulating conduct of its attorneys give it the predominant interest). Given the facts before the Court and the policy interest regulating the conduct of attorneys licensed within a particular state, this factor weighs in favor of the application of Minnesota law. On balance, the Court

finds that Minnesota has the more substantial interest in the claim at issue and that Minnesota

law applies to Plaintiffs' legal malpractice claim.

The law is clear, although perhaps harsh. Minnesota courts have regularly dismissed

professional and medical malpractice claims for failure to comply with expert review

requirements. In Meyer, 156 F. Supp.2d at 1090-91, this Court granted summary judgment in

the defendants' favor on the plaintiffs' legal malpractice and breach of fiduciary duty claims.

This Court concluded that expert testimony was necessary to address conflict of interest

allegations and that the failure to provide the affidavits required by Minn. Stat. § 544.42

warranted entry of summary judgment against plaintiffs. In House, 105 F. Supp.2d at 1053, this

Court examined the legislative history of the statute, concluding that a 60-day cure period for a

deficient affidavit of expert disclosure was inapplicable to a case where no affidavit was filed:

"We do not believe that the legislature intended to extend this opportunity [of 60 days in which

to correct a deficient affidavit] to a party who completely fails to provide an affidavit." Rather,

by failing to provide the affidavit at all, this Court found the Plaintiffs' complaint "frivolous per

se," and dismissed the action. Id. at 1054-55.   Similarly, in Brown-Wilbert, Inc. v. Copeland

Buhl & Co., P.L.L.P., the court distinguished "borderline" analogous medical malpractice cases,

i.e., cases in which the expert disclosure affidavit was timely provided, but failed to fully or

technically comply with the statutory requirements. 732 N.W.2d 209, 219 (Minn. 2007). The

court noted that in such borderline cases, "where counsel for a plaintiff identifies the experts

who will testify and give[s] some meaningful disclosure of what the testimony will be," there

might be less drastic alternatives to dismissal, id. (quoting Sorenson v. St. Paul Ramsey Med.

Ctr., 457 N.W.2d 188, 193 (Minn. 1990)), but the information provided in Brown-Wilbert was

not sufficient.  In response to the argument that dismissal was too harsh a result for a "good

faith" failure to comply, the Minnesota Supreme Court found intent irrelevant:  "[W]e read

section 544.42, subdivision 4, to describe objective requirements for an affidavit of expert

disclosure that can be measured on the face of any document that is claimed to be such an

affidavit, without inquiry into counsel's intent."  Id. at 216.   Moreover, as is the case here, in

House, this Court found that dismissal was procedurally proper, given that the plaintiffs were

sufficiently aware of the application of Minn. Stat. § 544.42 to their case.  House, 105 F.

Supp.2d at 1054-55.

        For the reasons set forth herein, because Plaintiffs have failed to provide an affidavit of

expert disclosure consistent with Minn. Stat. § 544.42, their legal malpractice claim against

Maslon is dismissed with prejudice.

> **B.     Plaintiffs' Claims for Negligent Misrepresentation/Negligent Omission and
>         Breach of Fiduciary Duty**

        In Count II of the Complaint, Plaintiffs allege a cause of action for negligent

misrepresentation/negligent omission, and in Count III, they allege a cause of action for breach

of fiduciary duty.  (Complaint ¶¶ 203-12; 213-16, Ex. 1 to Removal Petition.)  Defendant argues

that these claims are derivative of Plaintiffs' legal malpractice cause of action and therefore

should be dismissed as well, for the same reasons applicable to dismissal of the legal malpractice

claim.  Plaintiffs contend that not all of Plaintiffs' claims are based on theories of negligence or

malpractice, and that Maslon improperly relies on unpublished legal authority for the proposition

that derivative claims are subject to dismissal under Minn. Stat. § 544.42.

        In the negligent misrepresentation/negligent omission claim, Plaintiffs contend that

Maslon was obliged to exercise a duty of care in making representations to Plaintiffs concerning

the senior loan and as to certain conditions, but negligently failed to do so.  (Id. ¶¶ 204-06.)  In addition, Plaintiffs allege that Maslon omitted certain material facts by failing to provide specific information related to certain transactions, as well as failing to divulge information concerning conflicts of interest.  (Id. 207-212.)  Plaintiffs' legal malpractice claim contains the same allegations:  Maslon owed Plaintiffs a duty of care, which Maslon breached by making misrepresentations concerning the senior loan and certain conditions, by failing to disclose specific information regarding certain transactions and by failing to advise Plaintiffs about conflicts of interest.  (Id. ¶¶ 197-202.)  The Court finds that Plaintiffs' claim for negligent misrepresentation/negligent omission is so similar to the claim for legal malpractice as to be derivative.  Moreover, like the legal malpractice claim, Plaintiffs will require expert testimony to support this claim.   Certainly, expert testimony will be necessary to address the applicable standard of care.

In its breach of fiduciary duty claim, Plaintiffs allege that Maslon had a fiduciary relationship with Plaintiffs which Maslon breached "by making misrepresentations, concealing and failing to disclose material facts and failing to inform Plaintiffs of material information, and by acting for their own benefit and the benefit of others which actions conflicted with the best interests of Plaintiffs."  (Id. ¶ 215.)   In the legal malpractice claim, in addition to the allegations concerning misrepresentations and failure to disclose information, including conflicts of interest noted above, Plaintiffs also allege that Plaintiffs and Maslon had a long-standing attorney-client relationship.  (Id. ¶ 198.)   Under Minnesota law, certain relationships, including attorneys and clients, "automatically give rise to a fiduciary relationship."  Central Bank v. Rowe Const., Inc., No. A10-1250, 2011 WL 1119872, *3 (Minn. Ct. App. Mar. 29, 2011) (quoting Thomas B.

27

<u>Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.</u>, 756 N.W.2d 907, 914 (Minn. Ct. App.2008)).  The Nevada Supreme Court has also held that breach of fiduciary duty claims arising out of the attorney-client relationship are legal malpractice claims for purposes of Nevada's statute of limitations, reasoning that "[a] cause of action for legal malpractice encompasses breaches of contractual as well as fiduciary duties because both 'concern[ ] the representation of a client and involve [ ] the fundamental aspects of an attorney-client relationship.'" <u>Stalk v. Mushkin,</u> 199 P.3d 838, 843 (Nev. 2009) (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, <u>Legal Malpractice</u> § 14:2 (2007)). The Court finds that Plaintiffs' claim for breach of fiduciary duty is also derivative of Plaintiffs' legal malpractice claim, as the claims are substantially similar.  Because the claims concern a breach of the applicable standard of care, the prosecution of both claims will require expert testimony. As discussed in the section of this Order addressing the legal malpractice claim, the allegations in Plaintiffs' breach of fiduciary duty claim are not so straightforward as to be easily determined by lay people. <u>See</u> Meyer, 156 F. Supp.2d at 1091 (finding that expert testimony was required for both breach of fiduciary duty and legal malpractice claims particularly in light of conflict of interest allegations, "which involves information that is not within the common knowledge of the jury.")

　　Having concluded that Counts II and III are directly related to the legal malpractice claim, and that, pursuant to the choice of law analysis conducted herein, Minnesota law applies to that claim, the Court applies Minnesota law to these two derivative causes of action. Minnesota's expert review statute contemplates application to <u>all causes of action</u> arising out of professional malpractice for which expert testimony is necessary, mandating dismissal "of each cause of action with prejudice as to which expert testimony is necessary to establish a prima

facie case."  Minn. Stat. § 544.42, subd. 6.  Minnesota courts have applied the statute

accordingly, dismissing claims derivative of legal malpractice claims.  Meyer, 156 F. Supp.2d at

1090-91 (dismissing legal malpractice and breach of fiduciary duty claims for failure to comply

with Minn. Stat. § 544.42); Berman v. Maslon, Edelman, Borman & Brand, LLP, No. A06-351,

2006 WL 3734278, * 3 (Minn. Ct. App. Dec. 19, 2006) (dismissing legal malpractice cause of

action for failure to comply with expert review statute, along with "directly related"

misrepresentation claim); Albert v. Binsfeld, No. C1-02-632, 2003 WL 139529, *2 (Minn. Ct.

App. Jan. 21, 2003) (affirming dismissal of Plaintiff's claims for breach of contract, promissory

estoppel, equitable estoppel, negligence and unjust enrichment, intentional interference with

contractual rights and intentional infliction of emotional distress, and misrepresentation, as

"relating back to" legal malpractice claim, for which dismissal was required under Minn. Stat. §

544.42), review denied (Minn. 2003).[9]

Although the Court finds that Minnesota law applies, Nevada law, in the analogous

medical malpractice expert review context, appears to similarly hold that when a claim is subject

to the requirements of  the medical expert review statute, the fate of a derivative claim, such as

loss of consortium, is dependent upon the survival of the underlying malpractice claim.  See

Fierle v. Perez, 219 P.3d 906, 909, n.2 (Nev. 2009) ("[W]e conclude that because of the

derivative nature of the claims, only the loss of consortium claims that arise from the surviving

---

[9]  Plaintiffs contend that "unpublished decisions must not be cited as precedent, except as
law of the case, res judicata, or collateral estoppel."  (Pls.' Mem. at 27-28 [Doc. No. 51]) (citing
Minn. Stat. § 480A.08, Subd. 3(b)).  Under the statute cited by Plaintiffs, it is a statement of a
decision without a written opinion that must not be cited as precedent.  Minn. Stat. § 480A.08,
Subd. 3(b).  The Berman and Albert decisions cited above are written opinions, albeit
unpublished.  As unpublished opinions of the Minnesota Court of Appeals, they are not
precedential, id., but the Court views them as persuasive authority, particularly as they are
consistent with the Court's opinion in Meyer.

res ipsa loquitur claims endure on remand.")

Thus, Plaintiffs' claim for negligent misrepresentation/negligent omission in Count II and breach of fiduciary duty in Count III relate to the legal malpractice claim in Count I.  Based on the Court's determination that application of Minn. Stat. § 544.42 results in the dismissal of Plaintiff's legal malpractice claim, the related claims in Counts II and III of the Complaint are dismissed as well.[10]

### C.   Plaintiffs' Claims for Aiding and Abetting Breach of Fiduciary Duty and Aiding and Abetting Misrepresentations and Omissions

In Count IV of the Complaint, Plaintiffs assert a cause of action for aiding and abetting the breach of fiduciary duty, and in Count V, they assert a cause of action for aiding and abetting misrepresentations.  (Complaint, ¶¶ 217-224; 225-229, Ex. 1 to Removal Petition.)  While Maslon argues that Minnesota's expert review statute should be applied to these claims as derivative of Plaintiffs' legal malpractice claim, Plaintiffs contend that these claims are distinct.

The aiding and abetting claims in Counts IV and V essentially plead that non-parties SFC, Scott and Bank of Oklahoma had a fiduciary relationship with Plaintiffs, which they breached, and of which Maslon was aware; and that these non-parties made certain negligent misrepresentations or omissions to Plaintiffs, of which Maslon was aware, or should have known.  Because these two claims are predicated on the acts of non-parties, the Court finds them distinct from Plaintiffs' legal malpractice claim.  Accordingly, the Court finds that Plaintiffs'

---

[10]  Plaintiffs' claims for negligent misrepresentation/omission and breach of fiduciary duty appear to suffer from other possible infirmities as well.  For example, a necessary element of a breach of fiduciary duty claim is the establishment of a fiduciary relationship and where an attorney breaches a fiduciary duty, the remedy to a client is the forfeiture of compensation. Ulanowski v. Nepper, No. A10-2198,  2011 WL 3903234, *3, n.4 (Minn. Ct. App. 2011) (citing Rice v. Perl, 320 N.W.2d 407 (Minn.1982))  This requires a showing of a relationship and, presumably, a showing of payment for legal services.

motion for dismissal pursuant to Minn. Stat. § 544.42 is inapplicable to these claims and the

motion is denied as it relates to Counts IV and V of the Complaint.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant's Motion to Dismiss (Doc. No. 43)  is **GRANTED in part** as to

Counts I, II and III of the Complaint, and **DENIED in part** as to Counts IV and

V; and

2.    Counts I, II and III of the Complaint are **DISMISSED WITH PREJUDICE**.


Dated:    October 18, 2011

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge